UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CORNELL WHITE,                    )
                                  )
                Petitioner,       )
                                  )
        v.                        )      No.  4:03CV415 FRB
                                  )
MICHAEL KEMNA,[1]                 )
                                  )
                Respondent.       )


**MEMORANDUM AND ORDER**

        This cause is before the Court on Missouri state prisoner
Cornell White's <u>pro</u> <u>se</u> petition for writ of habeas corpus pursuant
to 28 U.S.C. § 2254.  All matters are pending before the
undersigned United States Magistrate Judge, with consent of the
parties, pursuant to 28 U.S.C. § 636(c).

        On August 21, 1998, in the Circuit Court of St. Louis
County, Missouri, a jury found petitioner guilty of two counts of
Murder Second Degree and two counts of Armed Criminal Action.
(Resp. Exh. B at 61-64.)  On September 18, 1998, petitioner was
sentenced as a prior and persistent offender to four consecutive
terms of life imprisonment.  (<u>Id.</u> at 76-77.)  Petitioner's
conviction and sentence were summarily affirmed on direct appeal.
<u>State v. White</u>, 9 S.W.3d 643 (Mo. Ct. App. 1999) (per curiam).
Petitioner's Motion for Rehearing and/or Transfer to the Supreme

---

        [1]Inasmuch as petitioner is challenging sentences to be served
in the future, Missouri Attorney General Jeremiah "Jay" Nixon
should be added as a proper party respondent.  Rule 2(b), Rules
Governing Section 2254 Cases in the United States District Courts.

Court was denied January 5, 2000.  Id.  Petitioner's Application to the Missouri Supreme Court for Transfer was denied February 22, 2000.  Id.  On May 22, 2000, petitioner filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15 which was amended September 11, 2000, with the assistance of appointed counsel. (Resp. Exh. G.)  The motion was denied November 17, 2000, without an evidentiary hearing. (Resp. Exh. F at 13-16.) On October 2, 2001, the Missouri Court of Appeals reversed the denial of post-conviction relief and remanded the matter back to the trial court for findings of fact and conclusions of law on petitioner's pro se claims which the trial court failed to address in its original order.  White v. State, 57 S.W.3d 341 (Mo. Ct. App. 2001).  Thereafter, on October 22, 2001, the trial court issued Supplemental Findings of Fact and Conclusions of Law, denying petitioner's claims for post-conviction relief in their entirety (Resp. Exh. K), and this decision was affirmed on appeal on November 5, 2002.  White v. State, 90 S.W.3d 498 (Mo. Ct. App. 2002).  Petitioner pursued no other relief in state court.  The instant petition for writ of habeas corpus, signed and verified by petitioner on March 19, 2003, was received by this Court on March 28, 2003, and filed April 1, 2003, upon petitioner being granted leave to proceed in the cause in forma pauperis.

Petitioner is currently incarcerated at the Crossroads Correctional Center in Cameron, Missouri.  In the instant petition,

petitioner raises seven claims for relief:

(1) That petitioner's convictions were not supported by sufficient evidence as to petitioner's culpable mental state and intent to aid in the murders;

(2) That petitioner was denied his due process right to access to the courts by the state appellate courts' frustration of petitioner's efforts to comply with Rule 29.15 governing post-conviction relief;

(3) That petitioner was denied effective assistance of trial counsel in that counsel failed to object when: a) the State allowed its witness to give false and misleading testimony and then argued the truth of such testimony during closing argument; b) the State introduced evidence regarding the absence of petitioner's fingerprints and then argued such evidence during closing argument; and c) when the State shifted the burden of proof during closing argument;

(4) That petitioner was denied effective assistance of trial counsel in that counsel failed to object when the State "hinted" at additional inculpatory evidence during closing argument;

(5) That petitioner was denied effective assistance of trial counsel in that counsel failed to object during closing argument when the State improperly vouched for the credibility of Detective Vitt and disparaged the credibility of witnesses Bobby Carson, Nicholas Miller and Patricia Perryman;

(6) That petitioner was denied effective assistance of trial counsel in that counsel failed to object when the State constructively amended the Information in opening statement; and

(7) That petitioner was denied effective assistance of counsel on direct appeal in that counsel failed to raise on direct appeal petitioner's claims of prosecutorial misconduct which were raised in his various claims of ineffective assistance of trial counsel.

On October 5, 2004, this Court granted petitioner leave to add an additional claim to his pending habeas petition, and specifically,

(8) That the trial court erred in overruling defense counsel's objection to the prosecution's improper closing argument regarding petitioner's motive for the crime.

In response, respondent contends that the claim raised in Ground 2 is not cognizable in this federal habeas proceeding and should be denied. Respondent further contends that the claims raised in Grounds 3, 4, 6, and 7 are procedurally barred from review inasmuch as petitioner failed to properly raise the claims in state court. Finally, respondent argues that the claims raised in Grounds 1, 5 and 8 are without merit and should be denied.

## I. Non-Cognizable Claim

In Ground 2, petitioner claims that the Missouri appellate courts frustrated his efforts to comply with Rule 29.15's dictate that all claims known to him for post-conviction relief shall be presented to the state court. Specifically, petitioner argues that his appointed counsel on post-conviction appeal failed to include petitioner's _pro se_ points in his appellate brief and that the Missouri Court of Appeals refused to accept and/or consider petitioner's _pro se_ points inasmuch as petitioner had counsel appointed for him. Petitioner further argues that the Missouri Court of Appeals refused to relieve petitioner's counsel from his appointment and refused to appoint new counsel or permit

petitioner to proceed _pro se_, thereby continuing to prevent petitioner from pursuing his _pro se_ points on post-conviction appeal. Petitioner thus argues that counsel's abandonment on post-conviction appeal and the court of appeals' refusal to remedy such abandonment resulted in a violation of his right to due process.

Federal habeas relief is available to a state prisoner only on the ground that he is in custody in violation of a constitutional or federal statutory right. <u>Williams-Bey v. Trickey</u>, 894 F.2d 314, 317 (8th Cir. 1990); 28 U.S.C. § 2254(a). Claims that do not reach constitutional magnitude cannot be addressed in a petition for writ of habeas corpus. <u>Carter v. Armontrout</u>, 929 F.2d 1294, 1296 (8th Cir. 1991). "Section 2254 only authorizes federal courts to review the constitutionality of a state criminal _conviction,_ not infirmities in a state post-conviction relief proceeding." <u>Williams-Bey</u>, 894 F.2d at 317 (emphasis added).

> Errors or defects in the state post-conviction proceeding do not, <u>ipso</u> <u>facto</u>, render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings. Habeas corpus in the federal courts does not serve as an additional appeal from state court convictions. Even where there may be some error in state post-conviction proceedings, this would not entitle appellant to federal habeas corpus relief since appellant's claim here represents an attack on a proceeding collateral to detention of appellant and not on the detention itself . . . .

<u>Williams v. State of Mo.</u>, 640 F.2d 140, 143-44 (8th Cir. 1981).

Petitioner's instant claim that the Missouri appellate courts denied him due process by frustrating his attempt to comply with Rule 29.15 does not challenge his conviction or sentence but rather challenges the method and process by which his state collateral relief was pursued. Such a claim is not cognizable in this § 2254 proceeding. Pennsylvania v. Finley, 481 U.S. 551, 556-57 (1987) (states have no obligation to provide avenues for collateral attacks on conviction); Kenley v. Bowersox, 228 F.3d 934, 938 (8th Cir. 2000) (attack on constitutionality of procedure employed in state post-conviction proceeding does not test legality of sentence); Williams-Bey, 894 F.2d at 317 (allegation of post-conviction motion court error not cognizable in § 2254 proceeding). To the extent petitioner claims that he received ineffective assistance of post-conviction counsel by counsel's failure to properly raise all of petitioner's desired claims on post-conviction appeal, it is well established that such a claim does not state a ground for relief in a federal habeas petition inasmuch as there is no constitutional right to effective assistance of post-conviction counsel. Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir. 1994) (citing Nolan v. Armontrout, 973 F.2d 615, 617 (8th Cir. 1992)); 28 U.S.C. § 2254(i).

Therefore, the claim raised in Ground 2 of the instant petition is not cognizable in this federal habeas proceeding and should be denied.

## II. Cognizable Claims

Petitioner's remaining claims appear to state claims that he is in custody in violation of his constitutional rights. Such claims are cognizable and thus may be addressed by this Court.

A. <u>Exhaustion Analysis</u>

A petitioner must exhaust his state law remedies before the federal court can grant relief on the merits of his claims in a habeas petition. 28 U.S.C. § 2254(b)(1); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999). The Court must first look to see whether the federal constitutional dimensions of the petitioner's claims have been fairly presented to the state court. <u>Smittie v. Lockhart</u>, 843 F.2d 295, 296 (8th Cir. 1988); <u>see also</u> <u>Boerckel</u>, 526 U.S. at 848. If not, the petitioner may still meet the exhaustion requirement if there are no currently available non-futile state remedies by which he could present his claims to the state court. <u>Smittie</u>, 843 F.2d at 296. When the petitioner's claims are deemed exhausted because he has no available state court remedy, the federal court still cannot reach the merits of the claims unless the petitioner demonstrates adequate cause to excuse his state court default and actual prejudice resulting from the alleged unconstitutional error. <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977); <u>Keithley v. Hopkins</u>, 43 F.3d 1216, 1217 (8th Cir. 1995); <u>Stokes v. Armontrout</u>, 893 F.2d 152, 155 (8th Cir. 1989). Before reviewing any claims raised in a

habeas petition, the Court may require that every ground advanced by the petitioner survive this exhaustion analysis. <u>Rhines v. Weber</u>, 544 U.S. 269 (2005).

A review of the record shows petitioner's remaining claims for relief to be exhausted inasmuch as petitioner either properly raised the claims in state court or currently has no available non-futile state remedy by which he could now pursue his claims.

B.  <u>Procedural Default</u>

In Grounds 3, 4, 6, and 7, petitioner raises various claims that he was denied the effective assistance of trial and/or direct appeal counsel.  A review of the record shows petitioner to have raised these claims in his Rule 29.15 motion for post-conviction relief, but that such claims were not properly raised on appeal of the denial of the motion. (Resp. Exh. G; Resp. Unmarked Exh., "Appellant's Substitute Statement, Brief and Argument," submitted to Missouri Court of Appeals in Appeal No. ED80474.)

A claim must be presented at each step of the judicial process in state court to avoid procedural default. <u>Jolly</u>, 28 F.3d at 53 (8th Cir. 1994) (citing <u>Benson v. State</u>, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)). "Failure to raise a claim on appeal from the denial of a post-conviction motion erects a procedural bar to federal habeas review." <u>Id.</u> (citing <u>Gilmore v. Armontrout</u>, 861 F.2d 1061, 1065 (8th Cir. 1988)); <u>see also</u> <u>Osborne v. Purkett</u>, 411

F.3d 911, 919 (8th Cir. 2005).  Because petitioner failed to properly raise the claims raised in Grounds 3, 4, 6, and 7 of the instant petition on appeal of the denial of his post-conviction motion, the federal court cannot reach the merits of the claims absent a showing of cause and prejudice or a demonstration "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

Petitioner appears to assert as cause the substance of his claim raised in Ground 2 of the instant petition, that is, that the Missouri appellate courts frustrated his compliance with Missouri Supreme Court Rule 29.15 by refusing to appoint new counsel and/or permit him to proceed pro se on post-conviction appeal.  For the following reasons, petitioner's contention is insufficient to establish cause excusing his procedural default.

A review of the record in this cause shows petitioner, through appointed counsel, to have appealed from the trial court's initial denial of his Rule 29.15 motion and to have raised one claim on said appeal:  That the trial court erred in denying petitioner's Rule 29.15 motion without ruling petitioner's pro se points which had been affixed to and incorporated in the amended motion filed by counsel.  Counsel filed the brief on appeal and prepared this Point Relied On as well as the accompanying Argument. Within this brief, counsel incorporated arguments submitted by petitioner pro se in relation to this claim.  Counsel then added a

final page with a prayer for relief, his signature and certificate of service. (Resp. Exh. H.) On the claim raised, the Missouri Court of Appeals reversed the decision of the trial court and ordered the cause remanded for the trial court to enter findings of fact and conclusions of law on all of petitioner's claims raised in his Rule 29.15 motion. <u>White</u>, 57 S.W.3d at 344. On appeal of the trial court's Supplemental Findings of Fact and Conclusions of Law, counsel filed Appellant's Statement, Brief and Argument. Unlike the brief on the initial appeal, however, counsel did not prepare any Points Relied On nor any accompanying Argument but instead submitted only petitioner's <u>pro se</u> points and arguments as prepared by petitioner. In addition, unlike the brief on the initial appeal, the final page did not include counsel's conclusion, signature and certificate of service but rather included only that of petitioner <u>pro se</u>. (Resp. Exh. L.) In an Order entered May 30, 2002, the Missouri Court of Appeals ordered this brief stricken from the record, specifically stating:

> Counsel for Appellant has filed an Appellant's brief raising no points on appeal. Counsel then attached a statement of facts and five points prepared by Appellant *pro se*. Such pleadings are not appropriate. Our Local Rule 380 specifically provides that "where a party is represented by counsel, the clerk shall not accept for filing any pro se briefs, pleadings, or other papers." Had counsel wished to have these points considered on appeal, then he should have included them as part of the brief prepared by counsel and officially submitted with his signature.

> Appellant's brief is hereby stricken.
> Appellant is granted until June 15, 2002 to
> file an appropriate brief or this appeal will
> be dismissed.

(Attchmnt. to Petr.'s Traverse/Docket No. 28.)

Counsel thereafter submitted Appellant's Substitute Statement, Brief and Argument in which the sole point raised was that trial counsel was ineffective by failing to object to the State's improper vouching of Detective Vitt during closing argument. (Resp. Unmarked Exh., "Appellant's Substitute Statement, Brief and Argument," submitted to Missouri Court of Appeals in Appeal No. ED80474.) Included in this brief was a final page with a prayer for relief, counsel's signature and certificate of service. (Id.) The Missouri Court of Appeals thereafter denied petitioner relief on the merits of this claim. White v. State, 90 S.W.3d 498 (Mo. Ct. App. 2002).

As noted in its Order, the Missouri Court of Appeals' refusal to permit the filing of petitioner's pro se brief was done in accordance with the mandate of Mo. Ct. App. E. D. Rule 380(a) (1995), which states:

> In any case where a party is represented by
> counsel, the clerk shall not accept for filing
> any pro se briefs, pleadings, or other papers.
> In the event that such briefs, pleadings, or
> papers are presented for filing, the clerk
> shall acknowledge receipt and notify the party
> that such papers are not being filed. The
> clerk shall notify the responsible attorney of
> the receipt of the papers, including with the

notification, copies of such papers.

Invoking the mandate of Mo. Ct. App. E. D. Rule 380, the court of appeals refused to accept this pro se brief and returned the brief to petitioner's counsel. Counsel's subsequent brief did not include petitioner's pro se claims. Inasmuch as the Missouri Court of Appeals refused to consider the claims raised in petitioner's pro se brief pursuant to a firmly established, regularly followed and readily ascertainable state procedural rule, this Court is barred from reviewing such claims by the state court's application of this independent and adequate state ground. See Malone v. Vasquez, 138 F.3d 711, 716-18 (8th Cir. 1998).

The undersigned is aware of Clemmons v. Delo, 124 F.3d 944 (8th Cir. 1997), wherein the Eighth Circuit held that the petitioner's claims were not procedurally barred from review inasmuch as the petitioner did all he could do to raise them before the Missouri Court of Appeals in a pro se brief. A review of the circumstances in Clemmons, however, shows the Eighth Circuit's holding there not to be applicable in the instant cause. In Clemmons, the petitioner brought a federal habeas petition in which he raised a Brady[2] claim that the State withheld exculpatory evidence prior to his trial. The district court determined such claim to be procedurally defaulted inasmuch as the claim was not raised on appeal of the denial of post-conviction relief. The

_____

[2]Brady v. Maryland, 373 U.S. 83 (1963).

- 12 -

Eighth Circuit disagreed, finding that in the unique circumstances of the case, Clemmons had fairly presented the claim to the state courts inasmuch as he had done all that he could do to present the claim for a decision on its merits. _Clemmons_, 124 F.3d at 948. Specifically, the Eighth Circuit found that Clemmons had written to his post-conviction appellate attorney and requested that all issues be preserved on appeal and that he be kept informed; that counsel instead filed a brief without including all claims as instructed and without providing Clemmons the opportunity to review it; and that Clemmons wrote counsel and instructed him to file a supplemental brief with the additional claims, and counsel refused. Clemmons then filed a motion with the Missouri Supreme Court requesting leave to file a supplemental brief _pro se_, which was denied by the court without comment. _Id._ In finding these circumstances to demonstrate that Clemmons fairly presented the _Brady_ claim to the state courts and not to constitute a procedural default, the Eighth Circuit stated that "Clemmons did the only thing he could do: he tried to bring the issue to the attention of the Missouri Supreme Court himself. We do not criticize that Court for refusing leave to file the supplemental brief. _Such matters are within the Court's discretion._" _Id._ (emphasis added). The Eighth Circuit then noted:

> No rule of court or reported Missouri case of which we are aware specifies the circumstances under which Missouri appellate

> courts allow pro se briefs. A state
> procedural rule must be regularly adhered to
> if it is to be an adequate state ground
> supporting a procedural bar. E.g., James v.
> Kentucky, 466 U.S. 341, 348-51 [] (1984).
> Sometimes Missouri courts allow pro se briefs,
> and sometimes they do not. That is their
> prerogative. But in the absence of regularly
> applied criteria, the decision not to allow
> such a brief cannot be said to rest on a
> regularly applied rule of state procedural
> law.

Id. at n.3.

Unlike the circumstances in Clemmons, the court of appeals' determination here not to accept petitioner's pro se brief was not discretionary, but rather was mandated by application of Mo. Ct. App. E. D. Rule 380(a) (1995).[3] In addition, unlike Clemmons, at the time petitioner's pro se brief was rejected, there existed a rule which set out the specific circumstances under which pro se filings would be allowed:

> (b) The Court may accept a timely pro se
> motion for rehearing or application for
> transfer filed after a decision in a criminal
> appeal or a Rule 24.035 or 29.15 appeal if
> counsel for the party has not filed a motion
> for rehearing or application for transfer, any
> pro se motion received or accepted shall be
> returned in accordance with the procedure in
> section (a).

> (c) This rule shall not apply to pro se
> pleadings or papers directed to the court

---

[3]Notably, Rule 380 was enacted and became effective January 1, 1995. At the time the petitioner in Clemmons submitted his pro se brief to the Missouri Supreme Court, that is, in 1990, there existed no similar rule.

concerning counsel.

Mo. Ct. App. E. D. Rule 380(b), (c) (1995).

As such, the discretionary act of accepting or denying pro se briefs, pivotal in the Eighth Circuit's determination in Clemmons, is not applicable in the instant cause of action. Indeed, in Hall v. Luebbers, 296 F.3d 685 (8th Cir. 2002), the Eighth Circuit recognized that, unlike the Missouri Supreme Court, the intermediate appellate courts in Missouri have established rules prohibiting the practice of filing pro se briefs, including Mo. Ct. App. E. D. Rule 380. Id. at 695 n.4.

As set out above, the Missouri Court of Appeals invoked the mandate of Mo. Ct. App. E. D. Rule 380 and struck petitioner's pro se brief and returned the brief to counsel. Such claims were thereafter not included in counsel's subsequent brief. Inasmuch as petitioner's claims were not fairly presented to the court of appeals pursuant to an independent and adequate state procedural rule, and nothing before the Court shows such rule not to be regularly adhered to, such claims are procedurally defaulted and cannot be reviewed by this Court. Coleman, 501 U.S. at 729-31, 750; Weeks v. Bowersox, 119 F.3d 1342, 1350 (8th Cir. 1997). To the extent petitioner argues that post-conviction counsel was ineffective in failing to raise on post-conviction appeal the claims he attempted to raise in his pro se brief, it is well settled that ineffective assistance of post-conviction counsel

cannot constitute cause to overcome a procedural default.  <u>Jolly</u>, 28 F.3d at 54.

Petitioner has thus failed to establish cause to excuse his procedural default.  Where a petitioner cannot show cause for his procedural default, the Court need not consider whether prejudice has been shown.  <u>Tokar v. Bowersox</u>, 198 F.3d 1039, 1052 (8th Cir. 1999); <u>Sherron v. Norris</u>, 69 F.3d 285, 289 (8th Cir. 1995).  Petitioner invokes the "fundamental miscarriage of justice" exception, however, by claiming that had trial counsel not committed the errors alleged above, a reasonable jury could not have convicted him of the crimes alleged.  Petitioner's argument is misplaced.

To raise the fundamental miscarriage of justice exception to the procedural default doctrine, petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted."  <u>Abdi v. Hatch</u>, 450 F.3d 334, 338 (8th Cir. 2006); <u>see also</u> <u>Brownlow v. Groose</u>, 66 F.3d 997, 999 (8th Cir. 1995).  "[A] claim of 'actual innocence' is . . . a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  <u>Mansfield v. Dormire</u>, 202 F.3d 1018, 1024 (8th Cir. 2000).  To successfully pursue a claim of actual innocence, petitioner must show 1) new reliable evidence not available at trial; and 2) that, more likely than not, no reasonable juror would have convicted

petitioner in light of the new evidence. <u>Amrine v. Bowersox</u>, 238 F.3d 1023, 1029 (8th Cir. 2001). Here, petitioner presents no new reliable evidence of actual innocence but rather repeats the claimed constitutional errors in his trial and pleads for justice. Such an argument "falls far short of the showing of actual innocence that is required to meet the miscarriage-of-justice exception." <u>Sweet v. Delo</u>, 125 F.3d 1144, 1151-52 (8th Cir. 1997); <u>see also</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 316 (1995) ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."); <u>Weeks v. Bowersox</u>, 119 F.3d 1342, 1352-53 (8th Cir. 1997) (en banc) (bare, conclusory assertion that a petitioner is actually innocent insufficient to excuse a procedural default). Inasmuch as petitioner has failed to present credible evidence of actual innocence, he has failed to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. <u>See</u> <u>Weeks</u>, 119 F.3d at 1352-53. Therefore, the Court's refusal to entertain petitioner's procedurally defaulted claims will not result in a fundamental miscarriage of justice.

Therefore, for the foregoing reasons, the claims raised in Grounds 3, 4, 6, and 7, of the instant petition are procedurally barred from federal habeas review and should be denied.

C.  Claims Addressed on the Merits

1.  Trial Court Error

In Ground 1 of the instant petition, petitioner argues that the evidence was insufficient to support his convictions. In Ground 8, petitioner argues that the trial court erred in overruling defense counsel's objection to the prosecution's improper closing argument regarding petitioner's motive for the crime. Petitioner raised these claims on direct appeal. In a summary order, the Missouri Court of Appeals denied petitioner relief. State v. White, 9 S.W.3d 643 (Mo. Ct. App. 1999) (per curiam).

Section 2254(d)(1) requires federal habeas courts to test the determinations of state courts "only against 'clearly established Federal law, as determined by the Supreme Court of the United States,'" and prohibits the issuance of a writ of habeas corpus "unless the state court's decision is 'contrary to, or involved an unreasonable application of,' that clearly established law." Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the

Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Id. (quoting Williams, 529 U.S. at 410-11).

The undersigned notes that on appeal, the Missouri Court of Appeals affirmed petitioner's conviction and judgment in a cursory manner finding that an extended opinion would be of no precedential value. (Resp. Exh. E.) This Court is therefore without the benefit of any analysis by which the Missouri Court of Appeals made its determination that petitioner was not entitled to relief on the claims properly brought before it. However, the absence of any legal analysis by the state court "does not mean that [petitioner] is necessarily entitled to habeas relief[.]" Huss v. Graves, 252 F.3d 952, 956 (8th Cir. 2001). Relief may be granted only if the decision of the state court is "substantially different" from what the decision would have been if that court had used the appropriate legal standard as established by the United States Supreme Court. Id. (quoting Williams, 529 U.S. at 405). As such, this Court must apply such established Supreme Court

precedent to the facts of this case to determine whether petitioner is entitled to relief on his claims. Id.

A review of the record in this cause shows the following evidence to have been adduced at trial: Brothers Timothy and Johnny Bolden lived at 6249 Julian in Wellston, Missouri. Timothy Bolden sold crack cocaine and marijuana from the house. Johnny Bolden was addicted to crack cocaine. Timothy's supplier of crack cocaine, a man known as "June," cut him off in January 1997 because Timothy was not paying his debts. At that time, Travis Garner began to supply crack cocaine to Timothy for him to resell. Garner had been to the Julian residence on various occasions. In February 1997, Garner and three other men went to the Julian residence and demanded that Timothy pay his drug debt to Garner. Some of these men were armed with guns. Garner and another man struck Timothy in the face during this encounter.

Petitioner Cornell White was a frequent and regular visitor to the house located at 6249 Julian, coming to purchase and smoke crack cocaine at the house. On many occasions, petitioner smoked crack cocaine at the house with Timothy and Johnny's mother, Ernestine Bolden. Petitioner did not always have the money to pay Timothy for the crack cocaine, but would let Timothy use his car for drug transactions in exchange for drugs. On January 1, 1997, Timothy was in an accident while operating petitioner's car, causing damage to such an extent that petitioner and his girlfriend

could not thereafter drive the car. Petitioner's girlfriend, the registered owner of the car, was angry with this occurrence and thereafter relied on public transportation for work and errands. Petitioner planned to purchase another vehicle. Timothy agreed that he would pay petitioner $300.00 for the damage. Timothy paid petitioner $150.00 in cash with the remainder to be paid in drugs.

In the late evening hours of March 16, 1997, or the early morning hours of March 17, 1997, Timothy and Johnny Bolden were murdered in their home at 6249 Julian. Johnny was shot six times: once to the left temple, twice to the face, once to the neck, once to the left forearm, and once to the upper left back. The shot to the left temple penetrated his brain and one of the shots to the face severed his spinal cord at the base of his brain, both independently sufficient to cause his death. Timothy was shot five times: four times to the head and once to the thigh. Three of the four shots to Timothy's head were independently sufficient to cause his death. Timothy was also cut numerous times about the face and neck with such cuts occurring while Timothy was still alive. When found, Timothy was lying in a large pool of his blood, with pieces of a broken beer bottle in the pool.

Detective Vitt testified during the trial that during his investigation of the crime, he obtained statements from Bobby Carson and Nicholas Miller that they were present at 6249 Julian during the late evening hours of Sunday, March 16, 1997, with

Timothy, Johnny and Nicholas' brother, Chris Miller, when two men came to the residence and walked into the middle room of the residence where Johnny and Timothy were located. The two men were identified by Nicholas Miller as being Travis Garner and petitioner. Bobby Carson's description of the person accompanying Garner on March 16, 1997, was consistent with petitioner's physical characteristics. Upon entering the room, Garner demanded that Timothy pay the money owed to him. Nicholas Miller told Detective Vitt that, given the threatening nature of Garner's statements, he felt something might happen, so he left the room and began walking toward the back of the residence to leave, at which time he heard gunshots. Nicholas Miller told Detective Vitt that, instinctively, he ran and departed the residence out the back door and ran to his home. Bobby Carson told Detective Vitt that he likewise felt uncomfortable with Garner's threatening demeanor and that he got up to leave the residence through the front door. Carson told Detective Vitt that Garner extended his left arm to prevent Carson from leaving and asked Carson where he was going, at which time Timothy told Garner to let Carson go inasmuch as he had nothing to do with what was going on. Garner then dropped his arm and Carson exited the residence through the front door. Carson also told Detective Vitt that within a day or two of the murders, he encountered petitioner who told him to keep his mouth shut or that he would end up dead like the brothers.

At trial, both Nicholas Miller and Bobby Carson denied making these statements to Detective Vitt. Bobby Carson further denied being at the Julian address on March 16, 2007.

During the investigation, police officers seized a bed sheet off of a mattress which was lying on the floor in the room where the victims' bodies were found. Bloody footprints on the sheet matched the tread design and heel size of a pair of petitioner's boots which had been seized from his home. Typing results on blood found in the rear yard of the residence, and specifically on a leaf and on a tree branch, were consistent with the petitioner's blood type. The DNA of blood found on a piece of white paper which was seized by police officers in the back room of the residence matched petitioner's DNA. The DNA of blood found on the top portion of one of petitioner's seized boots matched the DNA of victim Timothy Bolden.

Petitioner was charged with two counts of Murder First Degree and two counts of Armed Criminal Action. Over the course of two days, and after over seven hours of deliberation, the jury found petitioner guilty of two counts of Murder Second Degree and two counts of Armed Criminal Action.[4]

---

[4]Travis Garner was convicted after a separate trial of two counts of Murder First Degree and two counts of Armed Criminal Action. <u>State v. Garner</u>, 14 S.W.3d 67 (Mo. Ct. App. 1999). He is serving four consecutive terms of life imprisonment. <u>Id.</u>

*a.  Ground 1 - Sufficiency of the Evidence*

In his first ground for relief, petitioner claims that there was insufficient evidence as to his culpable mental state and as to his intent to aid in the crimes, and that therefore his conviction violates due process.  The Missouri Court of Appeals summarily rejected this claim.

At the time petitioner's conviction became final, the law was clearly established that for due process purposes, the relevant inquiry in reviewing the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  See also In re Winship, 397 U.S. 358, 361-64 (1970); Sullivan v. Louisiana, 508 U.S. 275, 277-78 (1993) (citing Duncan v. Louisiana, 391 U.S. 145, 149 (1968); Sparf v. United States, 156 U.S. 51, 105-06 (1895)); Jenner v. Class, 79 F.3d 736, 742 (8th Cir. 1996).  It is well established that state law defines the elements of state-law crimes.  Fenske v. Thalacker, 60 F.3d 478, 480 (8th Cir. 1995); Turner v. Armontrout, 845 F.2d 165, 168 (8th Cir. 1988).  As such, a state appellate court's conclusion that the evidence was sufficient to support a criminal conviction is entitled to great deference by a federal court.  Jackson, 443 U.S. at 323.

Under Mo. Rev. Stat. § 565.021 (1984), a person commits

the crime of Murder Second Degree if he:

> (1) Knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person; or

> (2) Commits or attempts to commit any felony, and, in the perpetration or the attempted perpetration of such felony or in the flight from the perpetration or attempted perpetration of such felony, another person is killed as a result of the perpetration or attempted perpetration of such felony or immediate flight from the perpetration of such felony or attempted perpetration of such felony.

Missouri law also dictates that a person is criminally responsible for the conduct of another when

> [] Either before or during the commission of the offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

Mo. Rev. Stat. § 562.041.1(2) (1979).

As to accomplice liability, "Missouri has eliminated the distinction between principals and accessories, and now, all persons who act in concert to commit a crime are equally guilty." State v. Wurtzberger, 40 S.W.3d 893, 895 (Mo. banc 2001). To make a submissible case of accomplice liability, the State has to show that the defendant "associated himself with the venture or participated in the crime in some manner," but does not have to

show that he "personally committed every element of the crime; mere encouragement is enough." State v. Neel, 81 S.W.3d 86, 91 (Mo. Ct. App. 2002). "Any evidence that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction. The law imputes to [the defendant] the criminal agency of his accomplices." Id. (citation omitted).

Petitioner argues that the evidence was insufficient to prove he had the requisite culpable mental state and intent to aid in the murders. Under Missouri law, the general rule as to intent is that "[i]f an accomplice has a purpose to promote an offense, he may be found to have the required culpable state of mind for that offense." State v. Roberts, 709 S.W.2d 857, 863 (Mo. banc 1986). To be liable as an aider and abetter, the evidence does not have to establish a defendant's specific knowledge of which particular crime his co-participant will commit. State v. Workes, 689 S.W.2d 782, 785 (Mo. Ct. App. 1985). "[I]f a defendant has embarked upon a course of criminal conduct with others, he is responsible for those crimes which he could reasonably anticipate would be part of that conduct." Id. Moreover, since direct evidence probative of the mental state is rarely obtainable, it may be inferred from the circumstances. State v. Turner, 623 S.W.2d 4, 7 (Mo. banc 1981).

In this cause, the evidence adduced at trial showed petitioner to have had a longstanding drug relationship with Timothy Bolden and his family. Petitioner did not always have the

money to pay Timothy for the crack cocaine he purchased from him. Two months prior to the murders, Timothy was in an accident with petitioner's car, damaging the vehicle to the point where it could no longer be driven. Petitioner's girlfriend, the registered owner of the car, was angry with this occurrence and thereafter relied on public transportation for work and errands. Timothy agreed to pay petitioner $300.00 for the damage to the car, and petitioner planned to purchase another vehicle. By March 16, 1997, Timothy had not yet paid petitioner the full $300.00. Petitioner was aware that Timothy was also in debt to his drug supplier. The evidence shows that on March 16, 1997, petitioner accompanied Travis Garner, Timothy's drug supplier, to Timothy and Johnny's residence; to have entered the residence with Garner; and to have associated himself with Garner as Garner demanded payment from Timothy in a threatening manner. Two days after the murder, petitioner encountered Bobby Carson, who was present at the Julian address when petitioner and Garner arrived on March 16 and witnessed the threatening conduct, and threatened that Carson would end up like the Bolden brothers if he said anything about the occurrence. From this evidence, the jury could reasonably have found that petitioner participated in a plan to recover debts from Timothy Bolden by accompanying Garner to the Bolden residence and associating himself with Garner during Garner's threats to Timothy to pay his debts. Garner's conduct was threatening enough that both Nicholas Miller

and Bobby Carson sensed something bad was about to occur and immediately left the scene. The presence of petitioner's bloody footprint at the scene as well as Timothy's blood on petitioner's boot permits a reasonable inference that petitioner was present when the offenses were committed. It is further reasonable to infer from these circumstances that petitioner embarked upon a course of criminal conduct with others from which he could reasonably anticipate the crime of second degree murder would occur. See State v. Howard, 896 S.W.2d 471 (Mo. Ct. App. 1995). Petitioner's culpable mental state is further shown by his subsequent threats to Bobby Carson that he could end up like the Bolden brothers if he did not keep his mouth shut. Id. at 495 (conduct after the offense is a circumstance from which one's participation in the crime may be inferred).

In light of the above, there was sufficient evidence to demonstrate beyond a reasonable doubt that petitioner acted with Garner in the commission of these offenses with the purpose of promoting their commission. To the extent there existed conflicting testimony at trial as to petitioner's presence at the scene, the undersigned notes that issues of credibility are matters left within the province of the jury. When addressing claims of insufficiency of the evidence, it is not the role of the federal habeas court to reweigh credibility issues. See Thiel v. Schuetzle, 200 F.3d 1120, 1122-23 (8th Cir. 1999).

This Court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and [it] must defer to that resolution." Miller v. Leapley, 34 F.3d 582, 585 (8th Cir. 1994) (citing Jackson, 443 U.S. at 326). In addition, a state appellate court's conclusion that the evidence was sufficient to support a criminal conviction is entitled to great deference by a federal court. Jackson, 443 U.S. at 323; Haymon v. Higgins, 846 F.2d 1145, 1146 (8th Cir. 1988). "[W]hether the record contains sufficient evidence to establish each element of the crime beyond a reasonable doubt 'is everyday business for the state courts, grist for their mill, and it will be a rare case in which a federal court on habeas will disagree with them.'" Cassell v. Lockhart, 886 F.2d 178, 179 (8th Cir. 1989) (quoting Moeller v. Attorney General of South Dakota, 838 F.2d 309, 310 (8th Cir. 1988)).

In light of the foregoing, this Court finds the decision of the state court in denying petitioner relief on this claim, albeit cursory, not to be "substantially different" from what the decision would have been if that court had used the appropriate legal standard as established by the United States Supreme Court. The claim raised in Ground 1 of the instant petition should therefore be denied. Huss, 252 F.3d at 956.

   b.   *Improper Closing Argument*

In his eighth claim for relief, petitioner contends that

the trial court erred on overruling defense counsel's objection to the State's closing argument that petitioner and Garner agreed to take drugs and money from the Bolden home and were thereby motivated to commit the crimes alleged. The Missouri Court of Appeals summarily rejected this claim.

Petitioner challenges the following remarks made by the prosecutor during closing argument:

> MR. SIDEL: . . . He and Travis were acting together. These were all people heavily involved in the drug usage and drug selling in Wellston, which is relatively small community. He's a drug user; Travis is a drug seller. You think it's unreasonable that people in that small community are going to meet each other, also right around that house on Julian. Yeah, they both met each other and they both probably talked outside and said, That S.O.B. in there owes me money.
>
> Really. Well he owes me money too. He owes me money for wrecking my car.
>
> And somehow they get together and must think, Let's get in there and get all the drugs they got and all the money. Because when the police search the house –
>
> MS. LIGGETT: Your Honor, I'm going to object. None of this is in evidence.
>
> THE COURT: It's argument. The objection will be overruled.
>
> MR. SIDEL: The police, when they searched that house they took a lot of stuff out of the house; they didn't take any drugs out of the house and didn't take any money. Why? Because it was a dope house, right? Dope is sold there; money is received for dope sold. There's no inventory of dope in that house

> 'cause they cleaned it out, and there is no
> money in the house.  So of course they had a
> motive for going in there and doing it.

(Resp. Exh. A, vol. II, at 801-02.)

Petitioner argues that the court erred by permitting the State to argue evidence not admitted at trial and implying that petitioner's and Garner's motivation to commit the crimes was to take the drugs and money known to be at the residence.

At the time petitioner's conviction became final, the law was clearly established that in determining whether a prosecutor's closing argument violated a defendant's due process rights, the pertinent inquiry is "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  The test applied to determine whether error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the error not occurred.  Lisenba v. California, 314 U.S. 219, 236 (1941); Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir. 1987). Federal habeas relief may be granted "only if 'the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial.'" Sublett v. Dormire, 217 F.3d 598, 600 (8th Cir. 2000) (quoting James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999)).  Having

reviewed the prosecutor's closing argument in its entirety, coupled with the evidenced adduced at trial, the undersigned cannot say that the argument so fatally infected the trial so as to render it fundamentally unfair.

First, the undersigned notes that the prosecutor's challenged remarks were made during his rebuttal in response to defense counsel's argument that there was no evidence to show petitioner's motivation to commit the crimes or that he acted with Travis Garner to commit the crimes. (Resp. Exh. A, vol. II, at 790-97.) "An advocate is permitted considerable latitude in responding to his opponent's arguments[.]" <u>United States v. Beaman</u>, 361 F.3d 1061, 1065 (8th Cir. 2004); <u>see also</u> <u>United States v. Young</u>, 470 U.S. 1 (1985) (viewed in context, prosecutor's remarks were a fair reply to defense counsel's closing argument and did not deny petitioner a fair trial). Arguing to the jury that Garner and petitioner met up and discovered that Timothy Bolden owed them both money and thereafter visited the Bolden house to recover their debts is a reasonable inference from the evidence adduced at trial that Timothy indeed owed money to both Garner and petitioner, that petitioner and Garner entered the Bolden house together whereupon Garner demanded that Timothy pay his past debts, that such demands were of such a threatening nature that two persons fled, and that gunshots within the home were heard immediately upon the flight of these two persons. Argument which

is based on evidence adduced at trial is not impermissible.  Ramsey
v. Bowersox, 149 F.3d 749, 756 (8th Cir. 1998); see also United
States v. Singer, 660 F.2d 1295, 1303-04 (8th Cir. 1981) (comments
not improper where statements refer to evidence rather than insert
extraneous and irrelevant issues before the jury).

    To the extent the prosecutor argued that petitioner and
Garner were motivated to steal drugs and money, such argument is
likewise a reasonable inference from the evidence adduced at trial.
The evidence showed both petitioner and Garner to have known that
Timothy engaged in numerous drug transactions at the house; that
petitioner frequently smoked crack cocaine while at the house and
on many occasions could not pay for the drugs; and that Garner had
demanded payment from Timothy in the past for his supply of crack
cocaine and continued to demand money on the night of the murders.
It is reasonable to infer from such evidence that petitioner and
Garner may have acted to recover their past due debts from Timothy
and to obtain drugs from the residence to feed petitioner's habit.
It was not impermissible for the prosecutor to argue such
inferences from the evidence.  Ramsey, 149 F.3d at 756; Singer, 660
F.2d at 1303-04.

    To support his argument that petitioner and Garner were
motivated to steal money and drugs from the Bolden residence, the
prosecutor stated that the police's failure to find drugs and money
showed the petitioner and Garner to have cleaned out the house.  No

evidence was adduced at trial, however, showing that the police did not recover drugs and money from the house. To the extent the prosecutor may have improperly argued extraneous material to the jury, this brief and isolated remark did not rise to such a level so as to render petitioner's trial fundamentally unfair. See United States v. Skarda, 845 F.2d 1508, 1511 (8th Cir. 1988) (in totality of circumstances, improper remark amounted to "only an insignificant blemish"). Given the strong weight of the evidence against the petitioner, the sufficiency of the evidence as to petitioner's culpable mental state (see discussion supra at Section II.C.1.a), and the instruction to the jury that closing argument is not evidence, it cannot be said that the verdict would have been different if the prosecutor had not made this brief remark. Kellogg v. Skon, 176 F.3d 447, 451-52 (8th Cir. 1999); see also Sublett, 217 F.3d at 601 (jury has common sense ability to put aside overzealous advocacy with help of court's instruction that arguments are not evidence); Roberts v. Bowersox, 137 F.3d 1062, 1066 (8th Cir. 1998) (en banc).

In light of the above, and giving due deference to the state court's decision on this claim, see James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999) (under Antiterrorism and Effective Death Penalty Act, court gives deferential review to state court decisions), it cannot be said that the course of closing arguments influenced the jury such that a reasonable probability exists that

the verdict might have been different had the alleged error not been made. See Donnelly, 416 U.S. at 643-45. Accordingly, this Court finds the Missouri Court of Appeals' decision in denying petitioner relief on this claim, albeit cursory, not to be "substantially different" from what the decision would have been if that court had used the appropriate legal standard as established by the United States Supreme Court. The claim raised in Ground 8 should therefore be denied. Huss, 252 F.3d at 956.

2. Post-Conviction Claim

In Ground 5 of the instant petition, petitioner claims that he was denied the effective assistance of trial counsel in that counsel failed to object during closing argument when the State improperly vouched for the credibility of Detective Vitt and disparaged the credibility of witnesses Bobby Carson, Nicholas Miller and Patricia Perryman.

As an initial matter, the undersigned notes that on his second appeal of the denial of his post-conviction motion, petitioner did not claim that trial counsel failed to object to the prosecutor's improper disparaging of witnesses Bobby Carson's, Nicholas Miller's and Patricia Perryman's credibility. (Resp. Unmarked Exh., "Appellant's Substitute Statement, Brief and Argument," submitted to Missouri Court of Appeals in Appeal No. ED80474.) Instead, petitioner argued only that counsel was ineffective in failing to object to the prosecutor's improper

vouching of Detective Vitt's testimony.  (Id.)  For a claim to be fairly presented to state court, a habeas petitioner must assert the same factual grounds and legal theories in the state court proceeding as he asserts in his federal habeas petition.  Picard v. Connor, 404 U.S. 270 (1971); Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996).  Mere similarity in claims is insufficient. Abdullah, 75 F.3d at 412 (citing Duncan v. Henry, 513 U.S. 364 (1995) (per curiam)).  Failure to raise the factual basis of a federal habeas claim in state court results in a procedural default of the claim.  See id.  Because petitioner failed to raise the same factual basis in state court as he raises here with respect to the prosecutor's alleged improper *disparaging* remarks, to the extent petitioner raise such a claim here, it is procedurally defaulted. For the reasons discussed supra at Section II.B, petitioner has failed to show cause for and prejudice resulting from his default, and cannot demonstrate that a fundamental miscarriage of justice would result if the Court were not to consider this aspect of petitioner's claim.  Coleman, 501 U.S. at 750.  Accordingly, the Court will not address this defaulted portion of petitioner's instant claim of ineffective assistance of counsel.

To the extent petitioner claims that trial counsel was ineffective for failing to object to the prosecutor's improper vouching of Detective Vitt during closing argument, such a claim was raised on appeal from the denial of petitioner's post-

conviction motion and, upon consideration of the merits of the claim, the Missouri Court of Appeals denied petitioner relief. (Resp. Exh. N.)

At the time petitioner's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that 1) his counsel's performance was deficient, and 2) the deficient performance prejudiced his defense. Id. at 687. In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." Id. at 688. The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

In this cause, the Missouri Court of Appeals applied the Strickland standard to petitioner's claim of ineffective assistance of counsel and found counsel not to have been ineffective in failing to object to the prosecutor's remarks challenged here by

petitioner. Specifically, the court found the prosecutor not to have vouched for Detective Vitt's credibility, but rather that he "distinguished Detective Vitt's testimony from that of other witnesses and permissibly offered his opinion that Detective Vitt's testimony was credible." (Resp. Exh. N, Memorandum at 4.) Noting that under Missouri law, a prosecutor may comment on the credibility of witnesses and that drawing a personal opinion from the evidence adduced at trial does not amount to "vouching," the court of appeals determined that any objection by counsel that the prosecutor was vouching for Detective Vitt would have had no merit. (Id.)

Counsel cannot be found to be ineffective for failing to object to permissible argument. See Clark v. Groose, 16 F.3d 960, 963 (8th Cir. 1994); see also Burton v. Dormire, 295 F.3d 839, 846 (8th Cir. 2002) (cannot fault counsel for failing to raise issue if no relief could possibly have been obtained); Blankenship v. United States, 159 F.3d 336, 338 (8th Cir. 1998) (no prejudice from counsel's failure to pursue non-meritorious issue); Grubbs v. Delo, 948 F.2d 1459, 1464 (8th Cir. 1991); Smith v. Armontrout, 888 F.2d 530, 545 (8th Cir. 1989) (counsel not ineffective in failing to pursue a matter upon which there is no reasonable likelihood of success); Meyer v. Sargent, 854 F.2d 1110, 1115-16 (8th Cir. 1988). As such, the decision of the Missouri Court of Appeals that counsel's failure to make a non-meritorious objection did not

constitute ineffective assistance was neither contrary to nor an unreasonable application of clearly established federal law. Nor has petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the claim raised in Ground 5 of the instant petition should be denied. 28 U.S.C. § 2254(d).

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that Missouri Attorney General Jeremiah "Jay" Nixon is added as a proper party respondent.

**IT IS FURTHER ORDERED** that petitioner Cornell White's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is dismissed without further proceedings.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue in this cause inasmuch as petitioner has failed to make a substantial showing that he has been denied a constitutional right.



UNITED STATES MAGISTRATE JUDGE

Dated this _25th_ day of September, 2006.